UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENISE SMALL,

            Plaintiff,

v.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

            Defendant.

Civil Action No. 04-12210-NG

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Massachusetts Institute of Technology ("MIT") submits the following statement of the material facts of record as to which there is no genuine issue to be tried.[1] To the extent these facts recount Plaintiff's allegations against MIT, MIT presents them as undisputed because MIT will assume them to be true, but legally insufficient, for the purposes of its Motion for Summary Judgment. MIT does not concede, and in fact disputes, Plaintiff's allegations on the merits.

**I.**     **Plaintiff's Employment at MIT**

1. In April 1998, plaintiff Denise Small ("Plaintiff") was hired as a temporary secretary in the Harvard-MIT Division of Health Sciences and Technology ("HST"). MCAD Deposition of Denise Small ("Small Dep."), at 61 (App. 16).

2. In her position as a temporary secretary, Plaintiff devoted her time to supporting both HST Principal Research Scientist Chi-Sang Poon and the HST Financial Office. Small Dep. at 68-69 (App. 18).

3. Plaintiff considered Dr. Poon and Robert Malone, the HST Administrative Officer ("AO") to be her supervisors. Small Dep. at 70 (App. 19).

---

[1] Cites to "App. __" refer to the materials in the Appendix of Exhibits Accompanying Defendant's Statement of Undisputed Facts.

4.      Although Mr. Malone did not assign Plaintiff specific tasks, she considered him a supervisor because she "was working in his area, and he was an administrative officer. He was the manager of the office," and "he was the equivalent of the manager of the HST department." Small Dep. at 71-72 (App. 19).

5.      In September 1998, Plaintiff was hired in a non-temporary capacity as a Senior Secretary in HST, replacing Elizabeth Court, a Caucasian female. Small Dep. at 83-84 (App. 22); Personnel Requisition Form (App. 163).

6.      In this position, Plaintiff was responsible for providing part-time secretarial, grant and research account support for Dr. Poon and part-time grant and research account support for several other HST Principal Investigators ("PI"), including Drs. Jim Weaver, Martha Gray and, for a brief period of time, David Edell and Steven Burns. Small Dep. at 72-74 (App. 19-20); Personnel Request Form (App. 163); Performance Evaluation for Denise Small for 1999 ("1999 Evaluation") (App. 164); Performance Evaluation for Denise Small for 2000 ("2000 Evaluation") (App. 166).

7.      Dr. Poon's and Dr. Weaver's grant funding each covered 20% of Plaintiff's salary, and the remaining 60% was covered by HST, which paid for the secretarial support that Plaintiff provided Dr. Poon and the grant and research support she provided to other PIs. September 1, 1998 Memorandum from Terrill Gadde to Ken Hewitt (App. 168).

## II.     Plaintiff's Reporting Relationship to the HST Administrative Officer

8.      As set forth in the job description for her Senior Secretary position, Plaintiff worked for multiple PIs, but the HST AO was her "immediate supervisor." Personnel Requisition Form (App. 163).

9.      This supervisory arrangement was consistent with the AO's role as manager of

2

HST and Plaintiff's salary funding, the majority of which came from HST. MCAD Deposition of Maria Judge ("Judge Dep.") at 26 (App. 109) (describing responsibilities of the AO); September 1, 1998 Memorandum from Terrill Gadde to Ken Hewitt (App. 168).

10. Plaintiff considered all of the PI's whom she supported to be her supervisors. Small Dep. at 85-85 (App. 22-23).

11. Plaintiff also believed that Mr. Malone, as AO, signed the Request for Personnel Form for her Senior Secretary position because he was the position's supervisor. Small Dep. at 80 (App. 21).

12. Plaintiff believes that Mr. Malone had input into her hiring as Senior Secretary and, in fact, Mr. Malone requested that Plaintiff be hired for the position. Small Dep. at 82 (App. 22).

13. Plaintiff's understanding was that the Senior Secretary position was "set up to . . . report to" the AO. Small Dep. at 80-81 (App. 21).

14. In fact, prior to accepting the Senior Secretary position, Plaintiff met with Mr. Malone to discuss the job's description and responsibilities. Small Dep. at 72-74 (App. 19-20).

15. Mr. Malone, as AO, "offered an opinion about [Plaintiff's] work performance" in the Senior Secretary position because, according to Plaintiff, he "offered opinions about the work performance of all of the people who reported to him." Small Dep. at 113-15 (App. 29-30).

16. According to Plaintiff, Mr. Malone could not have formed an opinion about her job performance if he didn't understand her job responsibilities. Small Dep. at 113-15 (App. 29-30).

17. The nature of the supervisory and reporting relationship for Plaintiff's position was summarized in 1999 and 2000 performance evaluations she received from Mr. Malone in which he wrote: "Denise occupies a position of unique responsibilities. . . . [S]he has, informally, several 'supervisors,' even though her actual reporting responsibility is to the Administrative

3

Officer in HST." 1999 Evaluation (App. 164); 2000 Evaluation (App. 166).

18. Consistent with the reporting relationship, Mr. Malone provided Plaintiff with performance reviews and Plaintiff believed that Mr. Malone had the authority to grant her a promotion or a raise in salary. Small Dep. at 113, 122-23 (App. 29, 32); 1999 Evaluation (App. 164); 2000 Evaluation (App. 166); October 27, 1999 Memorandum from Denise Small to Robert Malone (App. 169).

19. In addition, Plaintiff understood that Mr. Malone, as AO, was required to approve Plaintiff's requests for overtime as well as her requests to take continuing education courses. Small Dep. at 116-20 (App. 30-31); March 3, 2000 Memorandum from Robert Malone to Denise Small (App. 170-171).

20. In June 2000, Mr. Malone left HST and Dr. Martha Gray, a co-director of HST, assumed Mr. Malone's duties and became acting AO for a period of time. MCAD Deposition of Martha Gray ("Gray Dep.") at 21-22 (App. 69).

21. Maria Judge subsequently was hired as AO of HST, a job that she began in November 2001. Judge Dep. at 20 (App. 107).

**III.  Plaintiff's Job Tasks and Overtime Work During Summer 2000**

22. Among Plaintiff's job requirements was assisting the PI's whom she supported with the administration of their grants. *See* Personnel Requisition Form (App. 163); 1999 Evaluation (App. 164); 2000 Performance Evaluation (App. 166).

23. Plaintiff admits that "from the time [she] was employed until the summer month[s] of 2000, [she] was treated very fairly" by MIT. Small Dep. at 89 (App. 23).

24. Plaintiff also admits that at least through the summer months of 2000, she was not asked to do any job or do anything that was discriminatory. Small Dep. at 89 (App. 23).

4

25. Until July 2000, Plaintiff performed miscellaneous tasks in support of a Biomedical Internship program that was funded by a grant that had been awarded to Dr. Gray. Small Dep. at 179-83 (App. 46-47).

26. Plaintiff claims that she was assigned "teaching assistant" responsibilities relating to the Biomedical Internship Program; however, these tasks in fact amounted to secretarial duties such as answering telephone inquiries and monitoring and inputting information into a database. Small Dep. at 178-81 (App. 46).

27. These routine assignments were part of Plaintiff's job description in assisting Dr. Gray with grant-related matters. Small Dep. at 178-81 (App. 46).

28. Further, these tasks – which Dr. Gray removed from Plaintiff on July 28, 2000 – lasted for a limited duration and took Plaintiff no more than 5.5 hours per week to complete. Small Dep. at 182-83 (App. 47).

29. When Plaintiff's responsibilities for the Internship Program ended, Dr. Gray asked her to take on some temporary, and minor, tasks that had been performed by another HST secretary who was on medical leave. Small Dep. at 179-81, 194 (App. 46, 50); August 16, 2000 E-mail from Martha Gray to Denise Small ("August 16 Gray E-mail") (App. 173).

30. These tasks (which Plaintiff testified lasted "for only . . . [t]wo or three weeks") consisted of checking HST PI Irving London's mail and providing minimal assistance to another HST PI, Jane-Jane Chen. Small Dep. at 179-81, 194 (App. 46, 50); August 16 Gray E-mail (App. 173).

31. Dr. Gray believed that the assumption of these tasks would be a routine undertaking and that Plaintiff had the time to perform them. Gray Dep. at 79 (App. 83); August 16 Gray E-mail (App. 173).

32. To confirm this, and in order to understand the allocation of how Plaintiff was, in fact, devoting her workplace efforts, Dr. Gray (who had just become the Acting AO) asked Plaintiff to compile brief, summary work logs for the weeks of July 17 and 24, 2000. Gray Dep. at 79 (App. 83); Work Logs Prepared by Denise Small (App. 174-175).

33. Plaintiff was asked to complete a total of three work logs during the summer of 2000. Small Dep. at 194-96 (App. 50).

34. Plaintiff did not consider Dr. Gray's requests for the first two work logs to be unfair. Small Dep. at 194-96 (App. 50).

35. Plaintiff spent approximately 25-35 minutes creating each log, and "combined all together, it could have taken [her] maybe an hour and a half, maybe and hour" to complete all of the work logs. Small Dep. at 194-201 (App. 50-51).

36. In August 2000, Plaintiff took it upon herself to install a new mailbox system for the laboratories of Dr. London and neighboring PIs, an act for which she sought 12 hours of overtime pay after she had performed the work. *See* August 18, 2000 E-mail from Lee Gehrke to Denise Small (App. 176).

37. Although Plaintiff admits that she violated HST policy by working overtime without first obtaining approval to do so, she was nonetheless given overtime pay for all overtime hours that she reported. Small Dep. at 204, 207-09 (App. 52, 53).

38. Plaintiff admits that the only time she supposedly was "denied" overtime occurred in August 2000, and in fact Plaintiff does not allege that a specific request for overtime was denied but rather that she was questions as to the need to work overtime, in particular after she worked overtime without obtaining prior authorization. Small Dep. at 202-07 (App. 52-53).

### IV.   Plaintiff's Internal Grievance

39.   Plaintiff filed a grievance dated August 21, 2000 with MIT's Affirmative Action Office, alleging that she had been discriminated against because (i) she had been given "additional" work assignments; (ii) she had been questioned about working overtime that was not pre-approved; and (iii) she was asked to submit a work log.  August 21, 2000 Memorandum from Denise Small to Personnel (App. 177-180).

40.   At the time she filed the grievance, Plaintiff believed that racial discrimination had occurred and "was occurring."  Small Dep. at 209-10 (App. 53-54).

41.   During the investigation that followed, she also expressed concern that a 1999 request to the AO for a change in her job title and salary had not been granted.  January 19, 2001 Complaint Investigation Report ("Investigation Report") (App. 181-183); Small Dep. at 226-27 (App. 58).

42.   Although Plaintiff initially styled her grievance on this issue as one for failure to promote, Plaintiff concedes that she "was not applying for a different position" but rather was "just applying for a change in [her] title and a raise."  Small Dep. at 227-229 (App. 58).

43.   Plaintiff's grievance was investigated by MIT Affirmative Action Officer Regina Caines.  Investigation Report (App. 181-183).

44.   For her investigation, Ms. Caines interviewed the key individuals whose job duties and responsibilities were relevant to the allegations raised by Plaintiff, and all of the people that Plaintiff named as parties important to the allegations she raised.  Investigation Report (App. 181-183).

45.   In January 2001, Ms. Caines issued a final report in which she concluded that her investigation "did not uncover evidence of discrimination."  Investigation Report (App. 181-

183).

46. When Ms. Caines presented her findings to Plaintiff in the "end[] of January, beginning of February" 2001, Plaintiff believed that the report was discriminatory and that her internal grievance "was just another mechanism turned against [her] in the form of discrimination." Small Dep. at 210-13 (App. 54).

47. In a memorandum to Ms. Caines about the investigation, Plaintiff claimed that Ms. Caines' report was "biased and discriminatory, and defeat[ed] the Equal Opportunity cause [Ms. Caines's] office was called to serve." April 5, 2001 Memorandum from Denise Small to Regina Caines at 3 (App. 186).

48. Nevertheless, in light of Plaintiff's complaint about the alleged "extra" duties she was assigned, Dr. Gray removed responsibility for these actions from Plaintiff as of mid-September 2000 and instead hired a temporary employee to perform them. Small Dep. at 189, 213-14 (App. 48, 54-55).

**V.   Plaintiff's Interactions with Dr. Weaver in 2001**

49. In 2001, Plaintiff's responsibility for Dr. Weaver's DACCA reports was transferred to another employee. Small Dep. at 216-17 (App. 55).

50. Prior to the transition, Plaintiff's DACCA-related responsibilities with Dr. Weaver "didn't take much time at all." Small Dep. at 217-220 (App. 55-56).

51. The DACCA-related responsibilities for Dr. Weaver required Plaintiff's attention on a bi-weekly basis and would take her "15 to 20 minutes . . . 30 minutes [at] the most" to complete. Small Dep. at 219-20 (App. 56).

52. For the years 1999 and 2000, Dr. Weaver completed performance evaluations for Plaintiff that reflected an average appraisal equal to a "highly effective" rating, and in his

8

summary statements for those reviews Dr. Weaver commented that Plaintiff's work was "overall very good!" Affidavit of Martha Gray, at ¶ 3 (Tab 2) (App. 147, 155); Affidavit of Martha Gray, at ¶ 4 (Tab 3) (App. 147, 162).

53. Plaintiff believes that the quality of work that she performed for Dr. Weaver was the same in 2001 as it was in 1999 and 2000. Small Dep. at 224-26 (App. 57-58).

54. For 2001, Dr. Weaver gave Plaintiff an overall performance rating that equated to a "highly effective" appraisal, and in his summary statement Dr. Weaver commented that Plaintiff's work was "[g]enerally very good." 2001 Performance Evaluation for Denise Small, completed by James C. Weaver (App. 193).

## VI. Proposed Move of Plaintiff's Office Space in 2001

55. In December 2001, HST offered Dr. Poon the option of moving to new space to consolidate his lab space and office space into a single building, as he had been requesting. Defendant Massachusetts Institute of Technology's Answers to Plaintiff's Second Set of Interrogatories at 7 (Answer to Interrogatory No. 12) (App. 201).

56. In connection with this proposed office move, Plaintiff was offered a choice of three potential offices and asked which would be most acceptable to her. Small Dep. at 215-16 (App. 55).

57. However, during her employment with MIT, Plaintiff's office space never was moved, and she never was reassigned from working with Dr. Poon. Small Dep. at 215-16 (App. 55).

## VII. Plaintiff Repeatedly Refuses to Meet with Ms. Judge and Her Employment Is Terminated

58. Shortly after she began her new job as AO, Ms. Judge endeavored to meet with "as many members of the HST community as [she] could" in order "to get to know HST and get to

9

know how it worked and who did what and get a better sense of what [her] responsibilities would be within HST." Judge Dep. at 36 (App. 111).

59.  Ms. Judge eventually conducted approximately 30 to 40 such meetings. Judge Dep. at 53 (App. 116).

60.  These meetings were held on a regular basis through the first few months of her employment, and began with "more senior administrators to talk about their areas of responsibilities [and t]hen [with other] . . . people in their areas to find out at the next level of detail how people worked." Judge Dep. at 38-39 (App. 112).

61.  Before scheduling these meetings, Ms. Judge consulted with her colleagues, including Dr. Gray, in order to get a general sense of what people's jobs were and who she should meet with. Judge Dep. at 36, 47-48 (App. 111, 114); Gray Dep. at 74-75 (App. 82).

62.  Among the people Dr. Gray mentioned was Plaintiff, because HST paid for a majority of Plaintiff's salary and, pursuant to Plaintiff's job description, she reported to the AO. Judge Dep. at 45-46 (App. 114); Gray Dep. at 74, 89-91 (App. 82, 86).

63.  Dr. Gray made no mention of Plaintiff's 2000 grievance prior to Ms. Judge's first attempt to meet with Plaintiff, and Ms. Judge had no knowledge that Plaintiff had ever filed a grievance prior to her first attempt to meet with Plaintiff. Judge Dep. at 32, 50, 52 (App. 110, 115).

64.  Because Ms. Judge learned that Plaintiff reported to the AO, she requested that HST personnel administrator Terrill Gadde provide her with a job description for Plaintiff's Senior Secretary position. Judge Dep. at 51, 57-58 (App. 110, 117).

65.  The job description she was given stated that the "position is technically supervised by the several scientist/researchers to which support is provided, but reports to the Division

Administrative Officer." Job Description: Senior Secretary – BMEC Staff (App. 203); Small Dep. at 143 (App. 37).

66. Ms. Judge also obtained job descriptions for the other HST employees who directly reported to her and she held meetings with each of those individuals in which she discussed their job responsibilities and asked them if their job description was accurate. Judge Dep. at 58-61 (App. 117-118).

67. Because of Plaintiff's job description and their reporting relationship, Ms. Judge would have scheduled a meeting with her regardless of Dr. Gray's recommendation that she do so. Judge Dep. at 52-53 (App. 115-116).

68. Prior to attempting to meet with Plaintiff, Ms. Judge held introductory meetings with approximately 15-20 other employees, including support staff, administrators and MIT faculty members, in which she discussed their roles in HST. Judge Dep. at 39, 44, 48-49 (App. 112, 113, 114-115).

69. On approximately January 22 or 23, 2002, Ms. Judge approached Plaintiff in an attempt to set up a meeting to discuss Plaintiff's job duties. Small Dep. at 132 (App. 34).

70. During the meeting, Ms. Judge showed Plaintiff a copy of the job description she had obtained from Ms. Gadde. Judge Dep. at 62-63 (App. 118).

71. Plaintiff responded that she had never seen the job description that Ms. Judge had shown her, but when Ms. Judge asked to see the job description that Plaintiff claimed she had, Plaintiff refused (claiming that the job description was at home) and instead directed Ms. Judge to MIT's personnel office. Small Dep. at 146 (App. 38).

72. Ms. Judge subsequently spoke with a representative of MIT's Human Resources Office, who informed her that there was no different job description for Plaintiff in the general

Human Resources files. Judge Dep. at 69-70 (App. 120).

73. In fact, the job description Plaintiff had, which actually was the job requisition form, also identified the HST AO as her "Immediate Supervisor." Small Dep. at 144 (App. 37); Personnel Requisition Form (App. 163).

74. Later in the day on January 23, Plaintiff left Ms. Judge a voicemail message canceling a meeting that they had scheduled to discuss Plaintiff's job responsibilities. Judge Dep. at 64 (App. 118).

75. Ms. Judge called Plaintiff after receiving this voicemail message and asked if they could reschedule the meeting; Ms. Judge also asked if Plaintiff could bring a copy of the job description that she claimed she had to the meeting. Judge Dep. at 64 (App. 118).

76. Plaintiff continued to refuse to provide Ms. Judge with the job description that she claimed she had, and accused Ms. Judge of harassing her. Judge Dep. at 65-66 (App. 119).

77. Ms. Judge ended the telephone conversation after being accused of harassing Plaintiff; Ms. Judge then spoke with a representative of MIT's Human Resources Office about how best to handle the situation with Plaintiff. Judge Dep. at 66, 69-70 (App. 119, 120).

78. On January 24, 2002, Plaintiff sent Ms. Judge an e-mail claiming that she did not feel "safe" meeting with Ms. Judge unless she was "allowed to record the meetings or have witnesses present to account for [their] conversations." January 24, 2002 E-mail from Denise Small to Maria Judge (App. 205); Small Dep. at 148-49 (App. 38).

79. The next day, Ms. Judge sent Plaintiff an e-mail explaining that she had requested the job description that Plaintiff claimed she had "to be sure that [they] were both working from the same set of information" for their meeting, which Ms. Judge reiterated was for the purpose of gaining a better of understanding of Plaintiff's job and was similar to meeting she already had

had with many other employees in HST. January 25, 2002 E-mail from Maria Judge to Denise Small ("January 25 Judge E-mail") (App. 206-207).

80.  Ms. Judge also agreed to "honor [Plaintiff's] request that Dr. Poon be present" at their meeting; she further informed Plaintiff that a member of MIT's Human Resources Office would attend the meeting as well. January 25 Judge E-mail (App. 206-207); Small Dep. at 149 (App. 38).

81.  From that point on, Ms. Judge attempted on several occasions, through both telephone and e-mail contact, to schedule a meeting with Plaintiff, giving Plaintiff several choices of dates and times. Judge Dep. at 72 (App. 120).

82.  One scheduled meeting between Plaintiff, Dr. Poon, Ms. Judge and a Human Resources Officer had to be postponed because of a conflict regarding the Human Resources Officer. *See* January 25 Judge E-mail (App. 206-207); Small Dep. at 151 (App. 39).

83.  Ms. Judge attempted to reschedule this meeting and proposed two dates; Plaintiff declined to schedule the meeting for either date, citing Dr. Poon's grant schedule. Small Dep. at 151 (App. 39).

84.  On January 28, 2002, Plaintiff sent Ms. Judge an e-mail again denying that the HST AO was one of her supervisors; Plaintiff stated that "as research support staff I do not report directly to the HST administrative office" and that she "would be most happy to interact with [Ms. Judge]" but only on the basis that Ms. Judge was not one of her supervisors. January 28, 2002 E-mail from Denise Small to Maria Judge (App. 208).

85.  On February 5, Plaintiff e-mailed Ms. Judge and informed her that she would not be able to attend a meeting that Ms. Judge had scheduled, citing the need to work on a grant proposal for Dr. Poon; Plaintiff also stated that she "discussed this with Dr. Poon, and he doesn't

agree to any meeting involving HR." Affidavit of Martha Gray at ¶ 2 (Tab 1) (App. 147, 148).

86. Plaintiff further informed Ms. Judge that she considered Dr. Poon to be her supervisor and referred Ms. Judge to him to set up any future meeting. Affidavit of Martha Gray at ¶ 2 (Tab 1) (App. 147, 148).

87. Dr. Gray, the co-Director of HST and someone that Plaintiff considered to be a supervisor, informed Plaintiff as early as February 5, 2002 that it was "paramount" that she meet with Ms. Judge and that it was "essential that [she] develop a good working relationship with [Ms. Judge]." February 5, 2002 E-mail from Martha Gray to Denise Small (App. 209); Small Dep. at 85-87 (App. 22-23).

88. Plaintiff understood Dr. Gray's instructions to mean that "it was necessary that [she] meet with Ms. Judge, that she] need[ed] to." Small Dep. at 154, 175 (App. 40, 45).

89. Previously, one of Ms. Judge's predecessors as AO, Robert Malone, met with Complainant in 2000 to "develop a clearer picture of how [her] time [was being] allocated" then. March 15, 2000 E-mail from Robert Malone to Denise Small (App. 210).

90. Plaintiff did not perceive Mr. Malone's request for a meeting in 2000 to be "unfair in any way" and complied with the request because "[a]s a reporting supervisor, [Mr. Malone's request was] reasonable." Small Dep. at 125-27 (App. 32-33).

91. In her February 5, 2002 e-mail, Dr. Gray also informed Plaintiff that MIT was "concerned" about Plaintiff's statement that she did not feel safe meeting with Ms. Judge or other HST personnel and, consequently, Dr. Gray informed Plaintiff that a representative from MIT's Human Resources Office would attend the meeting between Ms. Judge and Plaintiff "to help understand the dynamics and to ensure that [Plaintiff had] no cause to fear for [her] safety." February 5, 2002 E-mail from Martha Gray to Denise Small (App. 209).

14

92. On February 6, 2002, Ms. Small sent an e-mail to Dr. Gray claiming that she had never previously reported to the HST AO and therefore believed she had "ample reason to not feel safe in any discussions with the HST Administration." February 6, 2002 E-mail from Denise Small to Martha Gray (App. 213).

93. Also on February 6, Ms. Judge was absent from work due to illness; consequently, Terrill Gadde e-mailed Plaintiff to inform her that Ms. Judge would not be able to make a scheduled meeting and that she proposed two alternate dates, one on February 7 and one on February 8, to reschedule the meeting. February 6, 2002 E-mail from Terrill Gadde to Denise Small (App. 211-212).

94. On February 7, 2002, Dr. Gray sent Plaintiff an e-mail again informing her that it was "important" that she meet with Ms. Judge; Dr. Gray reiterated the two dates and times for the meeting, one on February 7 and one on February 8, and instructed Plaintiff to contact Ms. Judge to set up the meeting. February 7, 2002 E-mail from Martha Gray to Denise Small (App. 214).

95. Despite Dr. Gray's clear instruction, Plaintiff never contacted Ms. Judge directly to discuss the two proposed meeting dates. Small Dep. at 157 (App. 40).

96. Later that day, on February 7, Dr. Gray and Ms. Judge received an e-mail from Dr. Lois Eichler of MIT Medical requesting that Plaintiff be given "some time away from" work. February 7, 2002 E-mail from Lois Eichler to Martha Gray and Maria Judge (App. 215).

97. MIT granted Plaintiff a leave of absence from February 7 through February 20, at which time Plaintiff returned to work. February 13, 2002 Letter from John Lloyd to Maria Judge (App. 217).

98. On February 22, 2002, Ms. Judge sent Plaintiff an e-mail to set up a meeting in Ms.

15

Judge's office for 10:00 a.m. on the following Monday, February 25 and informed Plaintiff that failure to attend the meeting would be cause for disciplinary action.  February 22, 2002 E-mail from Maria Judge to Denise Small (App. 218); Small Dep. at 163 (App. 42).

99. Later that day, Ms. Judge received an e-mail from Suze Prudent of MIT Medical informing her that Plaintiff had been encouraged to "go home and not return to the office" that day.  February 22, 2002 E-mail from Suze Prudent to Maria Judge (App. 219).

100. Plaintiff did not attend the February 25 meeting and did not inform Ms. Judge that she would not attend the meeting.  Small Dep. at 164 (App. 42).

101. On February 26, 2002, Ms. Judge sent Plaintiff a letter in which she issued Plaintiff a written warning for her failure to attend the scheduled February 25 meeting.  February 26, 2002 Letter from Maria Judge to Denise Small ("February 26 Judge Letter") (App. 220).

102. The letter also informed Plaintiff that if she did not contact Ms. Judge by February 28, she would be terminated for insubordination, absent mitigating circumstances.  February 26 Judge Letter (App. 220).

103. Because Plaintiff was not at work on February 26, and had not informed Ms. Judge of her whereabouts, Ms. Judge had the letter delivered to Plaintiff's home.  February 26 Judge Letter (App. 220).

104. Ms. Judge did not know that Plaintiff was out sick on February 26, 2002 at the time she sent the letter to Plaintiff's home.  Judge Dep. at 98 (App. 127).

105. On February 27, 2002, Plaintiff sent an e-mail to Ms. Judge in which she claimed that Ms. Judge's action of sending a letter to Plaintiff's home was "unacceptable" and expressly informed Ms. Judge that she "will not meet with [her] under any circumstances;" Plaintiff concluded the e-mail with the sentence "PLEASE DO NOT STALK ME."  February 27, 2002 E-

mail from Denise Small to Maria Judge (App. 221-222); Small Dep. at 171-72 (App. 44).

106.   In a letter dated March 4, 2002, Dr. Gray and Dr. Bonventre, the other co-Director of HST, explained to Plaintiff that Ms. Judge's letter of February 26 had been delivered to her home because Plaintiff had given no notice to Ms. Judge or anyone else in MIT management that she was going to be absent from work that day.  March 4, 2002 Letter from Martha Gray and Joe Bonventre to Denise Small ("March 4 Gray Letter") (App. 223-224).

107.   In the letter, Dr. Gray and Dr. Bonventre also reiterated that Plaintiff was required to meet with Ms. Judge, and specifically stated that Plaintiff's assertion, made in her February 27 E-mail, that she would not meet with Ms. Judge under any circumstances was "not acceptable behavior for an MIT employee."  March 4 Gray Letter (App. 224).

108.   Plaintiff was informed that she had until the close of business on March 4, 2002 to revoke in writing her assertion that she would not meet with Ms. Judge under any circumstances and, if she failed to do so, she would be terminated.  March 4 Gray Letter (App. 224).

109.   Plaintiff understood after receiving this letter that her employment would be terminated if she refused to meet with Ms. Judge or any other manager upon request.  Small Dep. at 175 (App. 45).

110.   In response to Dr. Gray's letter, Plaintiff e-mailed Dr. Gray and again denied that Ms. Judge was her supervisor; Plaintiff claimed that she would be willing to meet with Ms. Judge "when Dr. Poon can be available and when the above circumstances [regarding the supervisory structure of Plaintiff's position in HST] have been clarified."  March 4, 2002 E-mail from Denise Small to Martha Gray (App. 225-226).

111.   Later that day, Terrill Gadde received a letter from Dr. Eichler and Dr. Lloyd of MIT Medical retroactively "clarify[ing] the duration of extended medical leave" for Plaintiff to

make the leave last from February 7 to March 4, even though Plaintiff had reported to work for part or all of several days within that time period.  March 4, 2002 Letter from Lois Eichler and John Lloyd to Terrill Gadde (App. 227).

112.   On March 5, 2002, Dr. Gray sent Plaintiff an e-mail again reiterating that Plaintiff was expected to meet with Ms. Judge.  March 5, 2002 E-mail from Martha Gray to Denise Small ("March 5 Gray E-mail") (App. 228-229).

113.   In her e-mail, Dr. Gray acknowledged that Ms. Judge had agreed to Plaintiff's request that Dr. Poon be permitted to attend the meeting, but commented that Dr. Poon's unavailability was one of the reasons why the meeting with Ms. Judge had not yet occurred.  March 5 Gray E-mail (App. 228-229).

114.   Dr. Gray instructed Plaintiff to arrange a time to meet with Ms. Judge on either March 5 or March 6, whether with Dr. Poon, with another MIT colleague, or alone.  March 5 Gray E-mail (App. 228-229).

115.   Plaintiff did not contact Ms. Judge to arrange a meeting, as she had been instructed to do by Dr. Gray; instead, in an E-mail to Dr. Gray on March 6, 2003, Plaintiff asserted that "[a]s for the meeting with Maria Judge, I will defer to Dr. Poon, my direct supervisor."  March 6, 2002 E-mail from Denise Small to Martha Gray ("March 6 Small E-mail") (App. 230-231).

116.   In this e-mail, Plaintiff again denied that the HST AO was one of her supervisors and informed Dr. Gray – the HST co-director and one of her supervisors – that in order for Plaintiff to consider Ms. Judge a supervisor, Dr. Gray "would have to discuss [the matter] with Dr. Poon first."  March 6 Small E-mail (App. 231).

117.   In light of her repeated refusals to meet with Ms. Judge, MIT terminated Plaintiff's employment as of March 7, 2002.  March 7, 2002 Letter from Martha Gray and Joe Bonventre to

Denise Small (App. 233-234).

118. Plaintiff understood that it was not inappropriate for Ms. Judge to want to discuss her job description with her, and she concedes that, based on Plaintiff's job description, Ms. Judge could have a good faith belief that Plaintiff reported to her and that Ms. Judge was her supervisor. Small Dep. at 139, 144 (App. 36, 37).

119. Plaintiff acknowledges that "it is an essential function of any job for an employee to meet with the person that she reports to if that person . . . requests a meeting." Small Dep. at 144-45 (App. 37).

120. Ms. Judge requested such a meeting on numerous occasions and Plaintiff "underst[ood] from the very beginning" that she was expected to meet with Ms. Judge and that failure to do so was insubordination. Small Dep. at 163-64 (App. 42).

121. Plaintiff now claims that she perceived the manner in which Ms. Judge initially approached her to be inappropriate, thus causing Plaintiff to refuse to meet with Ms. Judge; Plaintiff concedes that, if Ms. Judge had approached her in a "manner" that Plaintiff deemed acceptable, she "would not have found any problems with [Ms. Judge's request for a meeting]." Small Dep. at 139-40 (App. 36).

122. Plaintiff has a history of losing, or leaving, jobs because of her belief that supervisors approached her inappropriately or made improper requests of her or otherwise treated her unfairly. Small Dep. at 37-49, 54-58, 60 (App. 10-13, 15-16).

123. Plaintiff also admits that it would have been reasonable for Ms. Judge to meet with her if Ms. Judge was meeting with other employees in HST to discuss their job responsibilities. Small Dep. at 160 (App. 41).

124. Plaintiff concedes that no one at MIT ever made any reference, derogatory or

otherwise, to her race, color, national origin or ancestry. Plaintiff's Answers to Defendant's First Set of Interrogatories, at 2 (Answer to Interrogatory No. 4) (App. 236).

          MASSACHUSETTS INSTITUTE OF TECHNOLOGY,
By its attorneys,

/s/ Robert Young
Jeffrey Swope (BBO #490760)
Robert G. Young (BBO #650541)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
617.239.0100

Dated: June 27, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 27, 2006.

/s/ Robert Young_____