UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE SMALL,<br><br>               Plaintiff,<br>v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>               Defendant. | Civil Action No. 04-12210-NG |

**REPLY TO PLAINTIFF'S OPPOSITION TO MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S MOTION FOR SUMMARY JUDGMENT**

Defendant Massachusetts Institute of Technology ("MIT") submits this short reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition").

Plaintiff's opposition to MIT's motion for summary judgment is limited to the issues of her termination and claim for retaliation. Her Opposition makes no mention of the other claims for which MIT has moved for summary judgment, which are addressed in Section II of the Memorandum in Support of Massachusetts Institute of Technology's Motion for Summary Judgment ("Memorandum"). *See* Memorandum at 15-20. Those claims must therefore be treated as waived. *See, e.g., Grenier* v. *Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) (quoting *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) for the proposition that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived").

Further, Plaintiff's argument that MIT acted with discriminatory or retaliatory animus when it terminated her employment is refuted by the clear record evidence, including her own admissions, that she ultimately refused to meet with Ms. Judge, her supervisor, in a blatant act of insubordination. MIT is therefore entitled to judgment as a matter of law on all of Plaintiff's claims.

**Argument**

I. **Plaintiff has produced no evidence to suggest that MIT's decision to terminate her employment was motivated by discriminatory or retaliatory animus.**

As demonstrated in MIT's initial memorandum, MIT terminated Plaintiff's employment for a legitimate, nondiscriminatory reason: her refusal to meet with Maria Judge, who was one of her supervisors, despite repeated instructions from both Ms. Judge and Dr. Martha Gray, a co-Director of HST, that she do so, after multiple postponements whenever Plaintiff proffered a potentially plausible reason for not meeting. *See* Memorandum at 10-14. Indeed, Plaintiff essentially concedes the legitimacy of the nondiscriminatory reason offered by MIT – even she admits that "[t]here is no dispute that there was an issue regarding [Plaintiff's] meeting with [Ms.] Judge." Opposition at 14.

Not surprisingly given this admission, Plaintiff's Opposition focuses almost exclusively on the times that she supposedly could not meet with Ms. Judge. *See, e.g.,* Opposition at 7-8. But Plaintiff was not terminated for those incidents. It was only when she ran out of excuses, and flatly refused to meet with her supervisor, that MIT terminated Plaintiff's employment.

Plaintiff also devotes a significant portion of her Opposition to sweeping (but wholly unsupported) claims of a supposed unconscious[1] institutional bias within MIT in an effort to ignore the glaring lack of evidence to support her individual claim of discrimination.[2] This effort is not sufficient to overcome MIT's motion for summary judgment. *See, e.g., Benoit* v.

---

[1] In support of her argument about this purported "unconscious" bias, Plaintiff cites only a few articles, of unknown academic merit, that discuss this issue on a broad societal basis. Plaintiff adduced no evidence to even hint that Dr. Gray, Ms. Judge or anyone else at MIT was influenced by stereotypes or other unconscious bias. *See* Opposition at 3-5.

[2] Plaintiff tries to divert attention from the core issue in this case by citing an internal MIT study on the status of tenured women faculty in science as purported support for her claims. *See* Opposition at 4-5. Plaintiff was not a faculty member at MIT, nor has she brought a claim of sex discrimination. In any event, the fact that MIT conducted and publicized its study on the status of women faculty is evidence that MIT is committed to avoiding discrimination, and to remedying it if exists.

*Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) ("[I]n employment discrimination cases . . . summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (internal quotations omitted). Plaintiff has produced no evidence to suggest that other employees outside of her protected class refused to meet with Ms. Judge and were not terminated. In fact, Plaintiff was the only employee in HST who refused to meet with Ms. Judge upon request. *See* Memorandum at 12.

Plaintiff's unyielding refusal to accept Ms. Judge as one of her supervisors and to attend what was supposed to be a perfunctory meeting ultimately caused her termination. Although she now says that she never refused to meet with Ms. Judge, Plaintiff's Opposition completely fails to address, much less explain away, the multiple emails she sent to Ms. Judge and Dr. Gray in which Plaintiff asserted, in an increasingly strident tone, that Dr. Poon was her only supervisor and that any meeting with Ms. Judge would have to be arranged through him, thus repudiating the direct instructions given to her, including by HST co-Director Dr. Gray, to arrange a meeting with Ms. Judge. *See* Memorandum at 10-14. MIT's Statement of Undisputed Facts asserts, and the Plaintiff does not dispute, that Plaintiff understood from the beginning that she was expected to meet with Ms. Judge, that it was not inappropriate for Ms. Judge to want to discuss her job description with her, and that failure to do so was insubordination. *See* Defendant's Statement of Undisputed Facts at ¶¶ 118-121.

The record in this case is therefore clear: Plaintiff's insubordination, not her race, was the reason why MIT terminated Plaintiff's employment.

**II.     MIT followed its internal policies and procedures in its dealings with Plaintiff.**

Plaintiff claims that MIT did not follow its own policies and procedures, particularly with respect to allowing Dr. Poon to attend the meeting with Ms. Judge. Opposition at 12. This

3

entirely mischaracterizes the undisputed record evidence. In January, Plaintiff asserted that she wanted Dr. Poon to attend the meeting with Ms. Judge, and Ms. Judge acquiesced in this request. *See* Appendix of Exhibits Accompanying Defendant's Statement of Undisputed Facts at App. 206. However, as of early March, Plaintiff still had not met with Ms. Judge, and she had cited Dr. Poon's alleged unavailability as one reason why several scheduled meetings could not go forward. Consequently, Dr. Gray emailed Plaintiff and, not for the first time, directed her to meet with Ms. Judge. *See id.* at App. 228. Dr. Gray allowed for the possibility that Dr. Poon would not be able to attend a meeting with Ms. Judge on March 5 or March 6, and thus advised Plaintiff that she could "have another MIT colleague attend in his place." *Id.* This was entirely consistent with MIT policy. That policy allows employees to be accompanied by colleagues in their meetings, but obviously does not give employees the right to designate a colleague who is never available to attend, so that the meeting can be completely avoided. *See* Dealing with Harassment at MIT, attached at Tab L of Plaintiff's Exhibits, at 41. MIT never deviated from its internal policies and procedures with respect to Plaintiff's meeting with Ms. Judge.

**III.    MIT's past treatment of Plaintiff does not support her claims.**

Plaintiff's effort to invoke MIT's handling of her use of overtime in August 2000 to support her claim of wrongful termination is wholly unavailing. The purported evidence that Plaintiff references to support her assertion that MIT treated her differently from other support staff is a selective sample[3] from the overtime records that MIT produced in an effort to show that other employees, including at least one African-American employee, worked overtime hours supposedly "without any reprimands" between March and August 2000 as compared to

---

[3] In fact, a review of the full records demonstrates that Plaintiff was at or near the top of HST support staff in overtime hours worked both for fiscal year 1999 (a total of 73 overtime hours worked, which ranked third in HST) and fiscal year 2000 (a total of 45 overtime hours worked, second only to another African-American employee). *See* Plaintiff's Exhibits at Tab NNN.

Plaintiff's 18.5 hours of overtime during that period. Opposition at 15. However, the sole issue with respect to Plaintiff's overtime hours in August 2000 was her failure to obtain pre-approval for working the overtime, a violation of MIT policy. *See* Memorandum at 3. Plaintiff has provided no evidence to suggest that other employees worked overtime without obtaining pre-approval, and thus her argument cannot survive even cursory scrutiny. Accordingly, this purported evidence of "prior treatment" cannot support her claim of discrimination.

The other incident of alleged "prior treatment" that Plaintiff cites is Dr. Gray's request in the summer of 2000 that Plaintiff create summary work logs. Opposition at 16.[4] Plaintiff suggests that the fact that Dr. Gray did not use the work logs "indicates the pretextual nature of her requirement that [Plaintiff] keep them." *Id.* at 16. This allegation disregards the record evidence that even Plaintiff cites. In fact, when asked about the work logs, Dr. Gray responded that she ended up never using them because Plaintiff had complained about having had to prepare them. *See* Deposition of Dr. Gray, Plaintiff's Exhibits, Tab E, at p. 62.

Plaintiff attempts to put MIT in a Catch-22 position: she claims that it was discriminatory for Dr. Gray to ask Plaintiff to prepare the work logs, because Dr. Gray agreed not to use the work logs after Plaintiff complained about having to prepare them. Plaintiff's inherently contradictory argument about the work logs cannot support her claims of discrimination in this case. Accordingly, Plaintiff's assertions of purported "prior treatment" do not undercut the legitimacy of the nondiscriminatory reason that MIT relied upon in terminating her employment.

---

[4] Because this incident occurred nearly two years prior to her termination, it has no probative value for assessing the motivation for the latter act. *See, e.g., Benoit*, 331 F.3d at 175 (summary judgment granted in favor of employer on retaliation claim where protected activity occurred more than a year prior to adverse action).

**IV.     Plaintiff's statistical evidence is flawed and does not support her claims.**

Plaintiff alleges that disciplinary actions taken against three other African-American employees in HST is evidence that her own termination was the product of discriminatory animus.  However, this offer of proof fails to create a genuine issue of material fact.  Plaintiff ignores disciplinary action taken against two non-African-American employees (casually dismissing this discipline as "debatable exceptions").[5]  Opposition at 17.  Moreover, with respect to the African-American employees who were disciplined, Plaintiff has failed to produce even a scintilla of evidence to suggest that employees of other ethnic backgrounds committed similar infractions but were not disciplined (just as she has failed to produce any evidence to suggest that any other employee refused to meet with a supervisor and was not terminated).  *See, e.g., Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129-30 (to show disparate treatment, "the plaintiff must identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently") (internal quotations omitted).

Plaintiff also cites the fact that Ms. Greene filed a complaint with the Massachusetts Commission Against Discrimination, but presents no evidence to suggest that the Commission ever made any finding that MIT discriminated against Ms. Greene in any way.  The mere filing of an administrative charge is no evidence that MIT discriminated against that person, much less against the Plaintiff.

Plaintiff's citation to the statistics in MIT's Affirmative Action Plan similarly fails.  While Plaintiff claims that approximately 10 to 14 percent of the available workforce for support staff positions is African American, she does not provide any evidence of the percentage of

---

[5] Even more "debatable" is Plaintiff's mistaken characterization of Mr. Rolle's termination as involuntary, especially given that Plaintiff included a copy of Mr. Rolle's separation agreement in her appendix of exhibits.  Mr. Rolle's separation agreement clearly describes his separation from MIT as a voluntary resignation.  *Compare* Opposition at 17, *with*  Plaintiff's Exhibits at Tab JJJ.

6

African-Americans who actually sought support staff positions within HST. *See Rodriguez* v. *SmithKline Beecham*, 224 F.3d 1, 7-8 (1st Cir. 2000) (statistical evidence purporting to show bias against women in higher-paying positions lacks probative value where the evidence fails to show how many women actually applied for such higher-paying positions).

## Conclusion

For the foregoing reasons and for the reasons set forth in MIT's initial memorandum in support of its motion for summary judgment, MIT is entitled to summary judgment on all of Plaintiff's claims.

|  |  |
|---|---|
|  | MASSACHUSETTS INSTITUTE OF TECHNOLOGY, By its attorneys, |
|  | /s/ Robert G. Young |
|  | Jeffrey Swope (BBO #490760) |
|  | Robert G. Young (BBO #650541) |
|  | EDWARDS ANGELL PALMER & DODGE LLP |
|  | 111 Huntington Avenue at Prudential Center |
|  | Boston, MA  02199-7613 |
| Dated: September 20, 2006 | 617.239.0100 |

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 20, 2006.

/s/ Robert Young