UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE SMALL, | ) |
|      Plaintiff, | ) |
| | ) |
|      v. | ) Civil Action No. 04cv12210-NG |
| | ) |
| MASSACHUSETTS INSTITUTE OF | ) |
| TECHNOLOGY, | ) |
|      Defendant. | ) |

GERTNER, D.J.

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT
February 29, 2008

Plaintiff Denise Small ("Small") brings three claims against defendant Massachusetts Institute of Technology ("MIT") in this employment discrimination action: (I) discrimination and retaliation under Title VII; (II) discrimination under 42 U.S.C. § 1981; and (III) discrimination and retaliation under Massachusetts General Laws ch. 151B. In essence, Small presents two theories -- first, that she was fired because of her race, and second, that she was fired in retaliation for having complained about discrimination. MIT has moved for summary judgment on all counts, arguing that Small was fired for simple insubordination and further, that some of Small's claims are time-barred.

MIT's claimed nondiscriminatory reason for terminating Small is her insubordination, plain and simple. Small, they claim, repeatedly refused to meet with her supervisor, wholly without justification. Small insists that that reason is pretextual and the record far, far, more complex. Plaintiff had an unblemished

record until 2000.  At that point she raised entirely legitimate concerns about her employment, which MIT rebuffed.  She did not "refuse" to meet with her supervisor; she raised legitimate questions about who her supervisor was and the MIT's human resource policies.  MIT is an educational and a research institution.  Small worked for or was supervised by a number of researchers.  The chain of command was, to say the least, ambiguous.  In addition, she claims that her treatment has to be set in the context of the treatment of other African-American employees.  Indeed, it mirrored the treatment of other African-American employees at MIT who were singled out for discriminatory treatment.

This case comes down to credibility and inference; ill-suited to summary judgment.  Clearly, the denial of defendant's motion for summary judgment is not a commentary on the strength or weakness of Small's claim or a prediction about who is likely to win.  It is merely a judgment that there is a factual contest as to critical issues, issues that a jury -- not a judge -- should resolve.

A few preliminary thoughts:  Historically, summary judgment, Fed. R. Civ. P. 56, was disfavored, not to be granted easily.  Given the strong preference for jury trials, the rule was to be construed in favor of the nonmovant.  Credibility questions and determinations as to the weight of the evidence necessarily require a jury trial to resolve.  In 1998, Judge Patricia Wald,

then Chief Judge of the D.C. Circuit, expressed concern about the development and direction of summary judgment in the federal courts, which concern I share.   She emphasized the importance of:

> ensuring that summary judgment stays within
> its proper boundaries, rather than . . .
> encouraging its unimpeded growth.  Its
> expansion across subject matter boundaries
> and its frequent conversion from a careful
> calculus of factual disputes (or the lack
> thereof) to something more like a gestalt
> verdict based on an early snapshot of the
> case have turned it into a potential
> juggernaut which, if not carefully monitored,
> could threaten the relatively small residue
> of civil trials that remain.

Patricia Wald, Summary Judgment at Sixty, 76 Tex. L. Rev. 1897, 1917 (1998).

Indeed, Judge Wald's concerns are particularly significant in a discrimination case where the central issue is a complex one:  Were the defendant's acts motivated by discriminatory animus?

I.    **FACT SUMMARY**

Small, an African-American woman, began working for MIT in 1998.  She worked as a senior secretary in the Harvard-MIT Division of Health Sciences and Technology ("HST").  She provided administrative support for several researchers in the department, primarily Dr. Chi-Sang Poon ("Poon").

For years, Small's evaluations were positive.  One, dated February 4, 2000, Plaintiff's Exhibit P,[1] is particularly instructive on both the question of Small's performance and who her supervisor was.  HST's former Administrative Officer Robert Malone ("Malone") wrote:

> Denise occupies a position of unique responsibilities, in that she is providing direct secretarial and administrative support, on a temporary basis due to space considerations, to a Principal Research Scientist, as well as serving as the primary support to several faculty and PI's for their discretionary and research account administration.  Thus, Denise is working with a range of people and issues . . . and must balance her time commitments to include a minimum of secretarial support to one office. In addition, she must be sensitive to the fact that she has, informally, several 'supervisors,' even though her actual reporting responsibility is to the Administrative Officer in HST.

Id. at 1 (emphasis supplied).  Despite the complexity of her position and reporting responsibilities, the evaluation reports that she had a "good attitude" and "prompt follow up on issues and problems," and had "sound judgments."  Id. at 1-2.  Indeed, the evaluation predicted a bright future for Ms. Small, the likelihood that she "will continue to grow in her job and contribute to the effective management and oversight of research accounts."  Id. at 2.

---

[1] Plaintiff's exhibits in opposition were submitted under seal as a single bound volume; all are under document #35.  The document number will be omitted from future citations to the plaintiff's exhibits.

Notwithstanding this evaluation, four years later, in March of 2002, Small was fired.

### A.  **Past History**

According to the plaintiff, her employment relationship began to sour in the summer of 2000.  While the defendant argues that any claim relating to an incident that occurred before August 2001 is time-barred by both Title VII and Massachusetts General Laws ch. 151B, the argument is misplaced.  Evidence from that time period may nevertheless be considered to put the acts which form the basis of plaintiff's claim in context.  Title VII does not bar "an employee from using . . . prior acts as background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2004).

HST co-director Dr. Martha Gray ("Gray") became more involved in Small's work in 2000.  Malone, the author of the positive recommendation described above, left some time after February 2000.  Small maintains that although she was working full-time in the summer of 2000, she was assigned extra work to cover for another staff member out on disability.  Small sought overtime to accomplish all her responsibilities.  Even though Small's overtime had been approved by one of her supervisors, Gray reprimanded Small for taking it.[2]  Small points out that she

---

[2] MIT argues that no one asked Small to perform the overtime tasks, and therefore she violated HST policy by working overtime without first getting authorization.

took 18.5 hours of overtime, and during that same period, other white co-workers took up to 96 hours of overtime without reprimand.  See Support Staff Overtime FY 99 FY 00, Pl.'s Exh. II; Support Staff Overtime FY 99 FY 00, Pl.'s Exh. LLL.

Gray also instructed Small to keep a work log in order to prove how she was spending her time.  Small contends that she was the only member of the support staff asked to do so.

**B.    Small's First Grievance**

On August 21, 2000, Small filed a complaint with MIT's Affirmative Action Office, alleging that she had been discriminated against because of the incidents described above. MIT's internal investigation concluded that there was no evidence of discrimination.[3]

**C.    Maria Judge**

In November of 2001 Maria Judge ("Judge") was hired as the new HST Administrative Officer ("AO").  MIT maintains that as Small's supervisor, Judge requested to meet with Small to discuss her duties and the way they were apportioned.  Small talked with Judge on January 22, 2002.  Deposition of Maria S. Judge ("Judge Dep.") at 117 (Jan. 5, 2006), Pl.'s Exh. C.  Between that conversation and March 7, 2002, when Small was terminated, the situation deteriorated.  MIT claims that the deterioration was attributable to Small who refused to meet with Judge for over

---

[3] Small argues that MIT's internal investigation was cursory and yet more evidence of discrimination.

five weeks, leading to Small's termination for insubordination. By contrast, Small maintains that she did not refuse to meet with Judge, that there were scheduling issues on both sides, and that she raised appropriate chain of command issues. The situation escalated, she claims, not because of her "insubordination" but because of her race.

### 1. **Plaintiff's Version**

Small maintains that with the exception of the first proposed meeting date, "with respect to every meeting that was scheduled before March 6, 2002, MIT requested to reschedule or Small was out on approved medical leave." Pl. Opp. at 10 (document # 33).

The first meeting with Judge was rescheduled, not because Small <u>refused</u> to meet with her, but because Small had to work on a grant proposal for one of her supervisors, Dr. Poon. Judge Dep. at 72-73, 75, Pl.'s Exh. C. Small asked that Dr. Poon attend the meeting with her because she believed, based on "her past treatment at HST, her knowledge of how other black employees had been treated, and prior representations that had been made to her," that she was at risk of being treated unfairly. Deposition of Denise Maria Small ("Small Dep.") at 149, Pl.'s Exh. A; Email from Denise M. Small to Martha Gray (Feb. 6, 2002, 10:44 EST), Pl.'s Exh. W; Email from Maria S. Judge to Denise M. Small (Jan. 25, 2002, 16:48:52 EST), Pl.'s Exh. MM; Email from Maria S. Judge to Martha Gray (Jan. 25, 2002, 19:17 EST), Pl.'s Exh. NN. Dr.

Poon volunteered to attend the Judge-Small meeting precisely because he had been Small's supervisor for three and a half years.  In fact, he tried to intercede with Judge so that Small would not feel threatened, confronted by a new AO who seemed not to know about Small's work.  <u>See</u> Email from Judge to Gray, Pl.'s Exh. NN.

The second proposed meeting was cancelled by Judge because no HR representative was available; the third was cancelled because Judge was out sick.  Judge Dep. at 73-75, 91, Pl.'s Exh. C; Email from Judge to Small, Pl.'s Exh. MM; Email from Martha Gray to Denise M. Small (Feb. 7, 2002, 05:40 EST), Pl.'s Exh. X.

The fourth meeting, set for February 7, was cancelled because Small was diagnosed with acute depression and out sick on approved medical leave.  Judge Dep. at 92-93, Pl.'s Exh. C; Personnel Action Request, Pl.'s Exh. PP.  Small's treating psychologist, Dr. Eichler, called Judge on February 11, telling her that "Small was overwhelmed and that they should let her continue to work for Poon, adding that the 'stakes are so high for this poor woman.'"  Deposition of Lois Eichler at 14-17 (Apr. 8, 2006), Pl.'s Exh. I.  And that condition persisted during the fifth proposed meeting time.  Small was still out on medical leave due to depression.[4]  Letter from Lois Eichler, M.D., and John Lloyd, M.D., to Maria Judge (Feb. 27, 2002), Pl.'s Exh. SS;

---

[4] Judge scheduled that meeting for February 25, 2002.  Small was out from February 22 to March 1.

Letter from Terrill Gadde, Personnel Administrator, HST, to Denise Small (Mar. 4, 2002), Pl.'s Exh. AAA.  Judge then sent the letter to Small's home, informing her that she would take disciplinary action if Small did not contact her immediately, and accusing Small of "refusing to meet" with her.  Letter from Maria S. Judge to Denise Small (Feb. 26, 2002), Pl.'s Exh. AA.  On February 27, Small filed complaints with the MCAD and the EEOC.

Small returned to work on March 4.  On March 5, "at 3:07 in the afternoon," Dr. Gray emailed Small, instructing her to meet with Judge either that day or the next, whether or not Poon was available, or face termination.  Small first saw Gray's email the next day, March 6, and replied that she would defer to Dr. Poon's schedule to set up a meeting.  Although Judge acknowledged that Small's last email did not in fact amount to a refusal to meet, Judge Dep. at 105-06, Pl.'s Exh. C, Small was fired the next day for that very reason.  Letter from Martha L. Gray to Denise Small (Mar. 7, 2002), Pl.'s Exh. GG.

Small argues that this series of events was itself pretextual.  Gray and Judge misrepresented the situation to her, maintaining that Judge was meeting with "all" employees, when she was not.  Email from Judge to Small, Pl.'s Exh. MM; Letter from Judge to Small, Pl.'s Exh. AA; Email from Maria S. Judge to Denise M. Small (Feb. 22, 2002, 09:41:55 EST), Pl.'s Exh. QQ; Letter from Joseph V. Bonventre, Co-director, and Martha L. Gray to Denise Small (Mar. 4, 2002), Pl.'s Exh. BB.  Judge only met

with 2 of 5 direct reports, 6 of 21 support staff, and 11 of 42
administrative and research staff.  Judge Dep. at 14-17, 33-39,
Pl.'s Exh. C; Directory of Administrative and Research
Assistants, Pl.'s Exh. L; Notes by Maria S. Judge, Pl.'s Exh. KK;
List of Administrative Staff and Meeting Dates by Maria S. Judge,
Pl.'s Exh. OOO.

   Moreover, Small contests defendant's claim that Maria Judge
was her supervisor, rather than Dr. Poon.  Judge worked in
Building E25; Small was told she and Dr. Poon would be moved to
Building 16 so that they could more easily interact.  Deposition
of Martha L. Gray ("Gray Dep.") at 84-85 (Dec. 6, 2005), Pl.'s
Exh. E; Letter from Joseph V. Bonventre, Co-director, and Martha
L. Gray (Dec. 21, 2001), Pl.'s Exh. T.  Poon signed Small's
timecards with the title "supervisor."  <u>See</u> Timecard, Pl.'s Exh.
WW.  There were five other employees with duties similar to
Small's, none of whom reported "directly" to Judge.  Judge Dep.
at 55, Pl.'s Exh. C.  A human resources officer at MIT
acknowledged that "there's always confusion on administrative
staff's part as to who they report to."  Deposition of Etaine N.
Smith at 36-37 (Jan. 26, 2006), Pl.'s Exh. H.  In any case, Small
maintains that her reasonable efforts to deal with this issue
were wholly misconstrued by MIT.  Had she been white, she
suggests this would not have happened.

   2.   <u>Defendant's Version</u>

-10-

MIT maintains that when Judge began as Administrative Officer, she tried to meet with "as many members of the HST community as [she] could." Deposition of Maria S. Judge (July 3, 2003), Def.'s App. Exhibits ("Def.'s App.") at 111 (document # 30).[5] Toward that end, at the direction of Dr. Gray, Judge attempted to schedule a meeting with Small. Judge contacted Small for a meeting in January of 2002. Small responded that Judge was not her supervisor. (She had some basis for that conclusion as described above). Further, she stated that she had a different job description than the one Judge showed her (Judge's description indicated that the Administrative Officer was Small's supervisor). MIT contends that although Small worked directly under several researchers, the Administrative Officer was always her immediate supervisor. MIT argues that Small understood this from the start of her employment with HST.

On January 23, 2002, Small canceled the meeting that Judge had scheduled. Judge called Small to reschedule, asking her to bring a copy of the alleged alternate job description. Small then accused Judge of harassing her. Id., Def.'s App. at 119.

The next day, January 24, Small emailed Judge, informing her that she did not feel "safe" meeting with her alone. At that point Judge agreed that Small could bring Dr. Poon along with her

---

[5] Defendant's exhibits in support of summary judgment were also submitted in a single sealed, bound volume; the pages of the Appendix are consecutively numbered. The Court will cite only to the page number of the Appendix. Similar to plaintiff's exhibits, all references to defendant's Appendix are to document # 30.

to the meeting, in accordance with MIT policy.  Judge also told
Small that she would bring a representative from MIT's Human
Resources Office.  Deposition of Denise M. Small (July 1, 2003),
Def.'s App. at 38; Email from Denise M. Small to Maria Judge
(Jan. 24, 2002, 11:55:08 EST), Def.'s App. at 205.

Several days later Small emailed Judge, postponing the
meeting because of Poon's grant proposal, Small further explained
that Dr. Poon did not agree that HR should attend the meeting,
adding "[p]lease communicate with him regarding this issue," that
he was her supervisor.  Email from Denise M. Small to Maria S.
Judge (Feb. 5, 2002, 13:26:17 EST), Def.'s App. at 148.  Gray
then emailed Small to let her know that it was "paramount" that
she meet with Judge.  Email from Martha L. Gray to Denise M.
Small (Feb. 5, 2002, 14:14:26 EST), Def.'s App. at 209.

On February 6, 2002, Small emailed Gray, again listing the
individuals who were her supervisors, and that she did not feel
"safe" attending a meeting with HST administration, without Dr.
Poon, "considering the past events."  Email from Denise M. Small
to Martha Gray (Feb. 6, 2002, 10:46:41 EST), Def.'s App. at 213.
Gray responded on February 7 that it was "important" that she
meet with Judge, and offered two dates.  Small never responded.
Email from Martha Gray to Denise M. Small (Feb. 7, 2002, 05:39:51
EST), Def.'s App. at 214.

Several weeks later, on February 22, Judge sent Small an
email setting up a meeting for February 25, and informing her

that "failure to attend this meeting would be cause for
disciplinary action."  Email from Maria S. Judge to Denise M.
Small (Feb. 22, 09:41:55 EST), Def.'s App. at 218.  That same
day, MIT Medical contacted Judge to let her know that Small had
been sent home sick.  Accordingly, because Small was on medical
leave, on February 26, Judge sent a letter to Small's home
telling her that if she did not get in touch with Judge by
February 28, she would be fired.  Letter from Maria S. Judge to
Denise M. Small (Feb. 26, 2002), Def.'s App. at 220.[6]

On March 4, Drs. Gray and Bonventure sent a letter to Small
explaining that her refusal to meet with Judge was "not
acceptable behavior for an MIT employee."  Letter from Joseph V.
Bonventre, Co-director, and Martha L. Gray, Co-director, to
Denise Small (Mar. 4, 2002), Def.'s App. at 224.  "Plaintiff was
given until the close of business on March 4 to revoke in writing
her assertion that she would not meet with Ms. Judge under any
circumstances and, if she failed to do so, she would be
terminated."  Id.  Gray reiterated this to Small the following
day in an email.  On March 6, Small emailed Gray again refusing
to meet with Judge.  On March 7, 2002, MIT fired Small.

D.  **Treatment of Other Black Employees**

---

[6] Defendant's memorandum is confused on this point.  It states that
"[b]ecause Plaintiff was not at work on February 26, and had not informed Ms.
Judge of her whereabouts, Ms. Judge had the letter delivered to Plaintiff's
home."  Def. Mem. at 7-8 (document # 26).  It goes on to say that "Ms. Judge
did not know that Plaintiff was out sick," despite having noted a paragraph
earlier that she had received an email from MIT Medical informing her that
they sent Small home.

Small contends that her treatment has to be set in the context of MIT's treatment of other black employees. She points to the lack of black employees, especially given MIT's own estimates of the relevant labor market. Between 1999 and 2002, before Judge came to MIT, six percent of HST's administrative employees (i.e. four employees) were black; MIT's estimate of the available labor pool was 10.62 to 14 percent. Affirmative Action Plan of MIT at 132 (Feb. 2003), Pl.'s Exh. III. By the time Judge was deposed on July 3, 2003, there were <u>zero</u> black employees working at HST. Gray Dep. at 94-95, Pl.'s Exh. E; Judge Dep. at 122-23, Pl.'s Exh. C; Deposition of Maria S. Judge at 22 (July 3, 2003), Pl.'s Exh. B.

Small also alleges that "with several debatable exceptions," the only employees subjected to disciplinary action were black, that virtually all the black employees received disciplinary action. Pl. Opp. at 17 (document # 33). Small maintains that three of the four black employees were involuntarily terminated -- Small, Greene, and Rolle. Deposition of Terrill L. Gadde ("Gadde Dep.") at 10-11, 32-37 (Jan. 10, 2006), Pl.'s Exh. F; Def.'s Suppl. Answers to Pl.'s First Set of Interrogatories, Pl.'s Exh. GGG at Tab B. Defendant concedes that disciplinary

actions were taken against two non-African-American employees, but insists that Rolle's termination was voluntary.[7]

Finally, Small argues that HST disregarded MIT's own affirmative action policies.  According to MIT's policy, support-staff positions are required to be posted "through the procedures prescribed in the Institute's Affirmative Action Plan."  Policies & Procedure, Administrative, Support, & Service Staffs, Pl.'s Exh. DDD.  At her deposition, Gray stated she did not know if HST or MIT had an affirmative action plan.  Gray Dep. at 94-95, Pl.'s Exh. E.  Gray had never hired a black employee that reported directly to her, id.; Judge "did not recall" if HST hired any black employees during her tenure, Judge Dep. at 122-23, Pl.'s Exh. C; and Gadde, HST's personnel administrator, did not know of hiring requirements imposed by an affirmative action plan.  Gadde Dep. at 39-40, Pl.'s Exh. F.  Small argues that 10-14% of the workforce is African American, a figure MIT does not come close to reaching.  Defendant counters that the only relevant statistic is derived from those who sought support positions.


II.  **ANALYSIS**

A.  **Standard of Review**:

---

[7] The circumstances of Rolle's separation are ambiguous.  See Letter from Andre Rolle, Senior Staff Assistant, HST, to "Maria" (July 2, 2002), Pl.'s Exh. JJJ.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Once the moving party demonstrates the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant."  Dow v. United Bhd. of Carpenters & Joiners of Am., 1 F.3d 56, 58 (1st Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  The nonmovant must then "affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

**B.    Discrimination Claims under Title VII, §1981, and M.G.L. 151B**

Under the McDonnell Douglas framework, the plaintiff must establish a prima facie case of discrimination; the defendant must then produce a legitimate nondiscriminatory reason for its actions.  And if the defendant does so, the plaintiff is obliged to show that a reasonable jury would find the employer's nondiscriminatory reason is in fact a pretext for discrimination.

At all times, the burden of proof remains on the plaintiff.[8]
<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973).

With respect to <u>McDonnell Douglas</u>'s burden-shifting framework, the First Circuit has held that <u>McDonnell Douglas</u> is not a rigid, talismanic test:

> [O]n summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus.

<u>Calero-Cerezo v. United States Dept. of Justice</u>, 355 F.3d 6, 26 (1st Cir. 2004).

To make out a prima facie case of racial discrimination, the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) her position remained open or was filled by someone of like qualifications. <u>See</u> <u>Benoit</u>, 331 F.3d at 173; <u>Straughn</u>, 250 F.3d at 33. Defendant does not dispute that Small has established a prima facie case.

Defendant's legitimate nondiscriminatory reason is not insubstantial. It argues that Small was fired because she was insubordinate: she repeatedly refused to meet with her alleged

---

[8] The <u>McDonnell Douglas</u> framework is also used to evaluate claims under 42 U.S.C. 1981, <u>see</u> <u>Straughn v. Delta Airlines</u>, 250 F.3d 23, 33 (1st Cir. 2001), and Massachusetts General Laws ch. 151B, <u>see</u> <u>Benoit v. Technical Manufacturing Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003). <u>See also</u> <u>Mullin v. Raytheon Co.</u>, 164 F.3d 696, 699 (1st Cir. 1999).

supervisor.[9]  MIT has offered sufficient evidence to support that claim.

The issue is whether Small has met her burdens. Significantly, the plaintiff is not required to "prove" pretext to survive summary judgment.  Rather, she must show that there is a dispute as to facts from which a reasonable factfinder could infer pretext.  Pretext can be shown "by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'"  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000).

---

[9] Defendant cites Tate v. Department of Mental Health, 419 Mass. 356 (1995), for the proposition that failure of an employee to recognize that "the employer has the right to direct the employee in her work" is insubordination, and therefore lawful grounds for termination.  See id. at 363 ("It is clear from this affidavit and from the memoranda and correspondence in the record that the Association had a legitimate nondiscriminatory reason to terminate the plaintiff, i.e., her constant refusal to accept the basic tenet of employment: the employer has the right to direct the employee in her work.").  In Tate, the plaintiff repeatedly sent memoranda to her supervisors, challenging their authority to direct the work in her project.  See id. at 359.  The trial court ruled in favor of the defendant on summary judgment.  The Supreme Judicial Court reasoned that "[t]he determinative issue then is whether the plaintiff will be able to satisfy her burden of proving that this stated reason was a pretext."  Id. at 363.  The Court found that the plaintiff "never contested the charge that she was insubordinate.  Instead of rebutting the allegation, the plaintiff's affidavit recounts her constant attempts to change the managerial structure implemented by the Association . . . ."  Id.  The court concluded that the affidavits, depositions, and memoranda submitted by the plaintiff did not rebut the allegation of insubordination, and that moreover, they provided no evidence of pretext.  See id. at 364.

On this record, Tate is inapposite.  While Small admits that she did not meet with Judge, the evidence she has submitted paints a plausible picture of discrimination.  Arguably, Small raised entirely legitimate concerns, which defendants wrongly gave short shrift because of her race, or there were simply miscues and missteps on each side -- which escalated for the same reason; either way discrimination was involved.

In determining whether a plaintiff has shown pretext, "the court must look at the total package of proof offered by the plaintiff." Benoit, 331 F.3d at 174.

Obviously, circumstantial evidence suffices to indicate pretext. Fifty years after the passage of the civil rights laws, it is unlikely that there will be a smoking gun. This is especially so when the contested fact is racial animus. "Title VII's prohibition against 'disparate treatment because of race' extends both to employer acts based on conscious racial animus and to employer decisions that are based on stereotyped thinking or other forms of less conscious bias." Thomas v. Eastman Kodak, 183 F.3d 38, 42 (1st Cir. 1999).[10]

Plaintiff has offered evidence from which a reasonable factfinder could infer that the defendant's nondiscriminatory reason is pretextual.

### 1.  Dispute over the Judge Meetings

Small contends that she did not refuse to meet with Judge, with one exception -- all of the proposed meeting dates were cancelled by Judge or were on dates when Small was out on approved sick leave. Moreover, Small argues that the request that she meet with Judge in the first place was itself discriminatory, and in any event, the sequence of events would not have progressed as it did if she were white.

---

[10] Plaintiff discusses unconscious bias at length in her opposition.

She argues that her treatment has to be put in the context of other MIT employees and MIT's record with respect to hiring and retaining African American employees.  While defendant counters this record, and in particular, the statistics plaintiff has offered, the issues it raises cannot be fully resolved at this stage.[11]

Likewise, the evidence with respect to Small's claims that only black employees were subjected to disciplinary action is contested, that three of the four black employees were terminated -- Small, Greene, and Rolle.  MIT challenges lumping Rolle in that category.  In addition, MIT points to disciplinary action that was taken against two non-African American employees.  Clearly, the issue is joined for summary judgment purposes.

Finally, adding to the context, Small claims that  MIT's affirmative action policies were ignored.  Gray did not know if MIT had an affirmative action plan.  Gray had never hired a black employee that reported directly to her, Judge "did not recall" if HST hired any black employees during her tenure, and Gadde, HST's

---

[11] Defendant argues that plaintiff's statistical evidence is not probative because she does not give the percentage of African Americans who actually applied for support staff positions, citing <u>Rodriguez v. SmithKline Beecham</u>, 224 F.3d 1 (1st Cir. 2000).  In <u>Rodriguez</u> the court held that the numbers the plaintiff offered were not given in a "context which would lend them probative value in a statistical sense." <u>Id.</u> at 7.  The court, however, did not hold that plaintiffs were required to give percentages of actual applicants; rather, the court offered that as an example of probative statistical evidence.  In fact, the court also pointed to the type of evidence that Small provided -- the relevant labor pool.  <u>See id.</u>

personnel administrator, did not know of hiring requirements imposed by an affirmative action plan.

Looking at the evidence "as a whole," <u>Calero-Cerezo</u>, 355 F.3d at 26, it is sufficient to allow a reasonable jury to infer pretext.  Defendant is not entitled to a judgment as a matter of law on the facts in the record.

**C.    Retaliation Claims Under Title VII and Massachusetts General Laws ch. 151B**

Small's retaliation claim is another matter.  To make out a prima facie case of retaliation, the plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a "causal link" between the protected activity and the adverse action.  <u>See</u> <u>Benoit</u>, 331 F.3d at 175; <u>McDonough v. City of Quincy</u>, 452 F.3d 8, 17 (1st Cir. 2006).  After plaintiff makes out a prima facie case, the burden shifts to the defendant to produce a legitimate nondiscriminatory reason for the adverse action.  Then the burden shifts back to the plaintiff to show pretext.

**1.    Application to Small**

Small argues that she engaged in protected action -- she made a formal internal complaint of discrimination in August 2000, and she also filed charges with the MCAD and the EEOC on February 27, 2002, prior to her termination.  Small suffered adverse action -- she was fired on March 7, 2002.  The question is whether there was a causal connection.

The temporal proximity strongly suggests a causal connection.[12] <u>Calero-Cerezo</u>, 355 F.3d at 35 (holding that a month between protected activity and discharge is sufficient temporal proximity). Additionally, Small argues that evidence in the record makes clear that MIT was aware of the MCAD complaint before they decided to terminate her. In an email sent the morning of March 7, the day Small was fired, the Vice President of Human Relations wrote:

> I believe that the intent is to go forward with Denise's [Small] termination today. She is extraordinarily manipulative and unfortunately has let Dr. Poon [her supervisor] serve as her advisor on how to handle her employment conflicts. Both she and Poon have cases before the Mass Commission on Discrimination, and I think we should let the Commission decide this one without further attempts on our part to mediate. Nothing has been successful to date. Each intervention unleashes a new spate of hateful and defiant responses. REDACTED. I support proceeding with the termination and letting Martha [Gray] and her staff work on something else for a change.

Email from Laura Avakian, MIT, to Robert Brown, Provost, MIT, and Alice Gast, Vice President for Research and Associate Provost, MIT (Mar. 7, 2002, 08:31 EST), Pl.'s Exh. FF.

Defendant argues that plaintiff received a final written warning of her impending termination on February 26, 2002 -- <u>before</u> she filed her MCAD grievance. <u>See</u> Def. Mem. at 15

---

[12] I refer here to Small's MCAD and EEOC complaints. Her August 2000 internal grievance is too remote in time to establish a causal connection.

(document # 26).  Therefore, her termination was in the works
before her filing.  In <u>Clark County School District v. Breeden</u>,
532 U.S. 268, 272 (2001) (per curiam), for example, while the
plaintiff was transferred one month after she filed her lawsuit,
her supervisor made the first comment about potentially
transferring the plaintiff the day <u>before</u> the supervisor got
notice of the lawsuit.  The Court concluded that an employer was
not precluded from taking previously considered actions because
an employee later filed a discrimination charge.

   Small did not respond to this argument in her opposition to
summary judgment.  MIT's warnings, according to Small, were part
and parcel of her discriminatory treatment.  While that may be
so, it is not, on this record, retaliatory.  I am obliged to
grant summary judgment on this claim.[13]

---

[13] Defendant also cites <u>Mole v. University of Massachusetts</u>, 442 Mass.
582 (2004), in which the court concluded that "[w]here . . . adverse
employment actions predate any knowledge that the employee has engaged in
protected activity, it is not permissible to draw the inference that
subsequent adverse actions, taken after the employer acquires such knowledge,
are motivated by retaliation."  <u>Id.</u> at 594.  In that case, the plaintiff, a
professor at the University, had a long history of poor teaching performance,
research performance, and a record of misrepresenting papers as publications.
In the midst of all this, his wife, also a research scientist at the
university, filed a sexual harassment claim against their supervisor.
Sometime afterwards, plaintiffs salary was reduced.  The court found
undisputed evidence that long before the sexual harassment complaint was ever
filed, "his relationship with [his supervisor] had already been strained, that
he was already losing financial support due to concerns of faculty members in
various departments, and that his teaching assignments were already being
transferred to other faculty."  <u>Id.</u>  The court reasoned "[t]hat evidence
undercuts any inference" that the university's motives were retaliatory for
Mole's support of his wife's claim.  <u>Id.</u>

### D.  __Other Claims__

MIT argues in its Memorandum in Support of Summary Judgment that four of plaintiff's discrimination claims are time-barred. "Plaintiff claims that because of her race (1) she was 'denied' a promotion in 1999; (2) MIT inappropriately added to her workload in 2000; (3) MIT improperly asked her to complete three work logs during the summer of 2000; (4) MIT improperly handled her internal complaint of discrimination in 2000."  Def. Mem. at 15 (document # 26).  In its Reply Brief, defendant argues that because plaintiff's opposition did not address these claims, they are waived.  See Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995).

There is no indication in plaintiff's papers that she is treating these issues as distinct claims.  Rather, she uses these incidents to paint a picture of her treatment at HST, arguing that her past treatment helps show that the reason given for her termination was pretextual.  "That she was denied fair treatment based on her race is demonstrated not only by the significant evidence of pretext, but by evidence regarding her past treatment and HST's treatment of other black employees."  Pl. Opp. at 14 (document # 33) (emphasis added).  She notes that "[c]ourts have long recognized that an employer's historical treatment of an employee is relevant in a discrimination case."  Id.

### III.    __CONCLUSION__:

For the reasons stated above, I **GRANT** defendant's motion for summary judgment on the retaliation count, and I **DENY** defendant's motion for summary judgment on the discrimination count.


**SO ORDERED.**

**Date:  February 29, 2008**      /s/Nancy Gertner
                                  **NANCY GERTNER, U.S.D.C.**